DECISION
{¶ 1} Relator, Emma W. Marcum, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation and to issue an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate determined that there was "some evidence" to support the decision of the commission. Therefore, the magistrate recommended that the court deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. Essentially, relator makes the same arguments that were rejected by the magistrate. Relator contends that, because the vocational expert opined that relator was unable to perform the high majority of the 200 unskilled sedentary jobs due to her inability to perform repetitive work activity with her dominate right hand, the commission abused its discretion in denying PTD compensation.
 {¶ 4} Relator's argument is unpersuasive. The commission identified relevant vocational factors and set forth at some length its evaluation of those factors. Although one may reasonably debate the number of sedenary jobs relator could perform given the restrictions on the use of her dominant right hand, there is clear evidence that relator is capable of performing some sustained remunerative employment. Therefore, there is some evidence to support the commission's decision and the commission adequately explained the rationale for its decision.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to those facts. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
BRYANT and LAZARUS, JJ., concur.
 DECISION IN MANDAMUS {¶ 6} Relator, Emma W. Marcum, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for compensation for permanent total disability ("PTD") and to issue an order granting the requested compensation.
Findings of Fact:
 {¶ 7} 1. In March 1998, Emma W. Marcum ("claimant") was working as a sales clerk and cashier for Volunteers of America when she injured her right wrist. Her workers' compensation claim was recognized for a sprained right wrist, fractured distal radius, ruptured flexor tendon and mechanical complications.
 {¶ 8} 2. She had several surgeries to treat the allowed conditions. Claimant is right-hand dominant and was 68 years old at the time of injury.
 {¶ 9} 3. Claimant returned to work as a greeter following surgery. When that position was eliminated, claimant was offered a return to cashier work. She briefly returned to the cashier position but ceased working for Volunteers of American in August 2000.
 {¶ 10} 4. In December 2000, claimant was referred to vocational rehabilitation. However, her rehabilitation file was closed because claimant indicated that she was not interested in the programs offered and that she "doesn't intend to return to work at this point in her life."
 {¶ 11} 5. In June 2001, William Reynolds, M.D., examined claimant on behalf of the Ohio Bureau of Workers' Compensation. Claimant stated that she was currently unable to stand but stopped taking Celebrex because of an ulcer. Claimant was five feet three inches tall and weighed 192 pounds. On examination of the right wrist and hand, claimant showed 120 degrees of dorsiflexion and 45 degrees of volarflexion. Claimant had full extension and flexion of her fingers, but there was decreased sensation over all nerves of the right hand. Dr. Reynolds concluded that claimant had reached maximum medical improvement of the allowed conditions and could operate a cash register.
 {¶ 12} 6. In July 2001, claimant applied for PTD compensation, stating that she was a high school graduate who could read, write and perform basic math. In support of her application, she provided a note from Wesley Hard, M.D., stating that claimant was not able to return to work.
 {¶ 13} 7. In August 2001, claimant was examined on behalf of the commission by Robert Turner, M.D., an orthopedic specialist. Dr. Turner observed that claimant was able to ambulate normally at the time of the examination, but he commented that claimant's hip condition was not part of the claim in any event. For the wrist examination, claimant removed a wrist brace that was well used. Dr. Turner stated:
 {¶ 14} "* * * The forearm sizes measure the same. She has multiple scars, there are two on the palmar aspect of the wrists, one for insertion of the plate and one for removal of the plate. She has a scar on the dorsum of the hand. Today, she had diffuse pain. I cannot say that the distal radial joint today hurts more than anything else. Her extensor hallucis longus tendon that was released appears to function normally. She does have a flexion contracture of the metacarpal phalangeal joint of the thumb, but I can reduce this and it appears to be an arthritic joint. In the flexed position then, she maintains a hyperextended position of the distal interphalangeal joint. Again, these joints can be reduced and range of motion is normal. There is no thenar or hypothenar atrophy. The positioning of the distal radius appears normal. Again, I cannot palpate any abnormalities in the DRUJ. Range of motion of the wrist is normal with the exception where she can only flex the wrist at 20 degrees, clearly different than the other side. She does have normal flexor function of the thumb. She has normal opposition of the thumb. Metacarpal phalangeal joint flexion and extension is normal at all digits, as is flexion and extension of the proximal phalangeal joint. She is only able to flex any of her distal interphalangeal joints about 5 degrees, she does so with authority. Unannounced observation as she makes a fist, demonstrates twice as much flexion. She does have triggering occur when flexing the PIP joints of both the index and the long fingers, which she says did not happen before her injuries and operations.
 {¶ 15} "DISCUSSION:
 {¶ 16} "The claimant really has several deformities but I'm not sure that I can totally explain, though probably had something to do with the injury, specifically the triggering of the index and long fingers and the thumb deformity. She clearly has some restriction of flexion, though this is really the only objective finding I have related to all of these injuries which again are quite legitimate. I forgot to mention that the palmaris longus is missing in the right hand, this has been used for the flexor profundus graft. While the claimant told me that she is not working because of her hip, it really does not appear that this right hand and right hand dominant person functions very well for use as a cashier. Obviously, her age doesn't help things either.
 {¶ 17} "OPINION:
 {¶ 18} "* * * The claimant has reached maximum medical improvement.
 {¶ 19} "* * * I am going to suggest that her percentage of permanent partial impairment is about 20%, and this is an estimation. The only thing that I can really document objectively, would be to use of Figure 26 of the AMA Guides, 4th Edition which would relate a 7% impairment of the upper extremity or a 4% impairment of the whole hand and whole person based on restriction of her range of motion of the wrist. I do not believe that this begins to justify this lady's impairment, so I am going to arbitrarily suggest 20% of the whole person.
 {¶ 20} "* * * The Physical Strength Rating form has been completed. I am going to state that she could do sedentary work, though obviously this right arm as noted above, just cannot be used for repetitive use."
 {¶ 21} 8. A vocational assessment was provided by John Kilcher, who stated that, based on the physical limitations identified by Dr. Turner, claimant could perform the following jobs: surveillance-system monitor, food and beverage order clerk, call-out operator, and telephone quotation clerk. Mr. Kilcher further opined that, based on the restrictions identified by Dr. Turner, the following entry-level jobs would be suitable for claimant with on-the-job training: appointment clerk monitor, routing clerk, credit authorizer, and credit card control clerk. Mr. Kilcher opined that claimant's age would render formal training infeasible but that claimant had the ability to engage in on-the-job training.
 {¶ 22} 9. In December 2001, a hearing was held, following which the commission denied PTD compensation:
 {¶ 23} "The Staff Hearing Officer relies upon the persuasive reports dated 08/21/2001 an[d] 06/21/2001 that were prepared by Industrial Commission Orthopedist Dr. Robert Turner and BWC Orthopedist, Dr. William Reynolds. Drs. Turner and Reynolds support the conclusion that the allowed physical conditions do not prevent the claimant from engaging in at least certain types of sustained remunerative employment.
 {¶ 24} "The claimant was injured on 03/05/1998 while working as a cashier for the Volunteers of America. * * * The claimant currently uses a wrist brace/splint. The claimant testified that she takes a pain pill at night, once a day. The claimant takes no other medications for the allowed conditions of the claim. The claimant returned to work for the same employer as a greeter and worked 3-4 hours a day.
 {¶ 25} "The claimant testified at hearing that the greeter job was eliminated by the employer and that she was returned to the cashier position. The claimant quit working approximately one month after she returned to the cashier position. Dr. Turner reports the claimant quit as she could not stand on her right hip although her hand continued to bother her. The claimant testified at hearing that she quit due to the right hand pain and as she could not use her right hand at all. The claimant is right hand dominant. According to the claimant's IC-2 Application, she is sometimes unable to perform her normal household duties such as running her sweeper and doing her dishes. The claimant testified as hearing, she makes breakfast and coffee daily and occasionally drives. The claimant has been receiving Social Security Retirement benefits since she turned 65 years of age in 1994.
 {¶ 26} "Dr. William Reynolds examined the claimant on behalf of the Bureau of Workers['] Compensation on 06/01/2001. According to Dr. Reynolds the claimant related to him that she is currently unable to stand. The claimant has a decreased sensation over all nerves of her right hand. An x-ray of her right hand showed a volar plate with three screws in good position and the fracture was healed. According to Dr. Reynolds, the claimant's condition had reached maximum medical improvement and that she could return to work as a cashier operating a cash register, her former position of employment, which would be good therapy for her.
 {¶ 27} "Dr. Robert Turner examined the claimant on 08/17/2001 on behalf of the Industria[l] Commission. Dr. Turner found the claimant had multiple scars on her right ha[n]d, her forearm sizes were the same measurement, and she had diffuse pain. The claimant's extensor halluces longus tendon functioned normally. The claimant had a contracture of the metacarpal phalangeal joint of the thumb which appeared to be an arthritic joint; the range of motion was normal. There was no thenar or hypothenar atrophy. The claimant has normal range of motion of the right wrist with the exception of her flexion which she could perform to 20 degrees. Metacarpal phalangeal joint flexion and extension was normal in all digits. The claimant was only able to flex her distal interphalangeal joints about 5 degrees. Upon unannounced observation, Dr. Turner observed the claimant made a fist which demonstrated twice as much flexion. The claimant has trigger of the PIP joints of her index and long fingers. Dr. Turner found the allowed conditions result in a 20% permanent partial impairment. The claimant is capable of sedentary work with no repetitive use of her right arm.
 {¶ 28} "The Staff Hearing Officer notes the Employability Assessment Report dated 10/09/2001 and prepared by Industrial Commission Vocational Expert John Kilcher. He supports the conclusion that based on the persuasive reports of Dr. Reynolds and Dr. Turner the claimant retains the residual functional capacities to perform sustained remunerative employment consistent with a number of job title[s].
 {¶ 29} "The job titles that were identified by the Vocational Expert as being current employment options for the claimant included: surveillance system monitor; order clerk; food and beverage; call-out operator; and telephone quotation clerk.
 {¶ 30} "The Staff Hearing Officer agrees. The residual functional capacities set forth in the above persuasive medical reports clearly would not physically prevent the claimant from engaging in sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options.
 {¶ 31} "The Claimant testified at hearing that she is currently approximately 72 years of age. The Staff hearing Officer finds that the claimant's age is overall viewed as a detriment; however, the claimant's age is not found to be a barrier to employment. A mere increase in age, rather than the allowed disability, may not be the sole causative factor to support an award. State, ex rel. Speelman v. Indus. Comm. (1992), 73 O.App.3d 757. Permanent total disability compensation was never intended to compensate a claimant for simply growing old. The Commission must have the discretion to attribute a claimant's inability to work to age alone and deny compensation where evidence supports such a conclusion. State,ex rel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461.
 {¶ 32} "The claimant's age in and of itself clearly would not prevent the claimant from obtaining and performing sustained remunerative employment consistent with the jobs identified by the Vocational Expert as being current employment options.
 {¶ 33} "The claimant indicated at hearing that she has completed approximately the twelfth grade of education. The Staff Hearing Officer finds that the claimant's level of education is overall viewed as a positive vocational factor. The claimant is able to read, to write, and to perform basic math.
 {¶ 34} "The Staff Hearing Officer finds the claimant's educational level, in combination with his [sic] ability to read, write, and to perform basic math, would assist the claimant in obtaining and performing the entry-level types of employment identified by the Vocational Expert as being current employment options.
 {¶ 35} "The claimant's prior work history was identified as including the following: sales clerk and dietary aide. The claimant worked as a dietary aide from July 1979 through July 1995 and worked as a sales clerk/cashier from July 1996 through August 2000. The claimant worked as a greeter for a short period of time.
 {¶ 36} "The Vocational Expert notes that the claimant's prior work history ranges from unskilled medium work (dietary aide) to semi-skilled light duty work (sales clerk/cashier). The claimant's prior work history is overall viewed as being a positive vocational asset. Sales experience even thirty years remote, however, can be considered an asset, as it applies the existence of interpersonal communication skills. State, exrel. Mobley v. Indus. Comm. (1997), 78 Ohio St.3d 579, [78 Ohio St.3d 579].
 {¶ 37} "The Staff Hearing Officer finds the claimant's residual physical capacity would not prevent the claimant from working as a surveillance-system monitor, a food and beverage order clerk, a call-out operator, and a telephone quotation clerk. An award of permanent total disability compensation should be reserved for the most severe disabled workers and should be allowed only when there is no possibility for reemployment. State, ex rel. B.F. Goodrich Co. [v.] IndustrialCommission (1995), 73 Ohio St.3d 525.
 {¶ 38} "Despite the claimant's advanced age, the claimant was contacted by vocational rehabilitation services in 12/2000. She indicated that she does not intend to return to work at this point in her life. The claimant's rehabilitation file was closed due to the claimant's lack of interest in services and as she does not plan to return to work.
 {¶ 39} "Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with that [sic] job titles identified by the Vocational Expert as being current employment options. Therefore, the claimant is not permanently totally disabled."
Conclusions of Law:
 {¶ 40} In this original action, claimant challenges the denial of PTD compensation. In the proceedings before the commission, the issue is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693; State ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414. In determining whether a claimant is able to perform sustained remunerative employment, the commission must consider not only medical impairments, but must also consider age, education, work record, and other relevant nonmedical factors in the record. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. In mandamus, the issue before this court is whether the commission cited "some evidence" to support its decision and provided a brief explanation of its rationale. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 41} In assessing the claimant's vocational potential, the commission has broad discretion to evaluate and interpret the evidence. See, e.g., State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139 (explaining that a claimant's job history may be viewed as positive or negative depending on the interpretation, and that a positive vocational trait may be inferred from his work history even where the work did not yield transferable skills). The commission itself is a vocational evaluator with considerable expertise, and it may reject all or part of an expert's opinion and form its own independent opinion regarding vocational questions. Id; State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266.
 {¶ 42} In the present action, claimant argues that the commission abused its discretion: (1) in relying on Dr. Reynold's report because he did not examine claimant on the issue of PTD; (2) in finding that claimant could perform the clerical jobs identified in the order because those jobs require repetitive activity with the right hand, which claimant cannot do; and (3) in failing to cite some evidence or provide an adequate explanation to support its conclusion that claimant can learn to perform sedentary work with on-the-job training. For the reasons set forth below, the magistrate finds no abuse of discretion in the commission's decision.
 {¶ 43} The magistrate finds no abuse of discretion in the commission's relying in part on the medical opinion of Dr. Reynolds. He examined claimant in June 2001, shortly before she filed her PTD application in July 2001. Dr. Reynolds concluded that, as of June 2001, claimant's impairment would not prevent her from returning to work. The commission agreed with his opinion to the extent that it found claimant was capable of returning to work, although it found Dr. Turner more persuasive as to specific capacities and restrictions. The magistrate concludes that Dr. Reynolds' examination and opinions were relevant to PTD issues, regardless of the reason that his examination was performed.
 {¶ 44} As to the second issue, the commission identified jobs that were within the medical restrictions set forth by Dr. Turner. Claimant disagrees, arguing that the jobs listed by the commission require repetitive use of her right hand. The commission relied on the report of Mr. Kilcher, and the magistrate concludes that claimant has not proved in mandamus that Mr. Kilcher's report did not constitute "some evidence" to support the commission's finding. In his report, however, Mr. Kilcher explicitly recited Dr. Turner's restrictions, noting that the doctor found claimant able to perform sedentary work with no repetitive use of the right hand, and he then opined that there were a number of jobs that could be performed within those physical restrictions. Claimant provides no evidence or authority to prove that Mr. Kilcher's list of job options is inconsistent with Dr. Turner's restrictions as a matter of law. For example, claimant does not prove in mandamus that the listed jobs would require repetitive use of her right hand.
 {¶ 45} Upon consideration of claimant's vocational capacities, Mr. Kilcher listed jobs that could be performed by claimant immediately, within the restrictions imposed by Dr. Turner: surveillance-system monitor, food and beverage order clerk, call-out operator, and telephone quotation clerk. In addition, Mr. Kilcher concluded that, with on-the-job training, claimant could perform the following jobs: appointment clerk monitor, routing clerk, credit authorizer, and credit card control clerk. Claimant presents no evidence that Mr. Kilcher's opinions in this respect were defective as a matter of law.
 {¶ 46} In its order, the commission accepted Mr. Kilcher's opinion that claimant had current, immediate job options. The commission did not proceed to consider, however, whether claimant could perform the additional jobs that required training. The magistrate sees no abuse of discretion in the absence of analysis as to whether claimant could engage in training, under these circumstances. Where the claimant can perform current/immediate options without training, it is irrelevant whether she can also perform jobs that require training, because the issue in a PTD application is whether claimant can perform any sustained remunerative employment. Domjancic, supra. The determination that claimant could perform sustained remunerative employment such as the jobs identified by Mr. Kilcher as immediate/current options was sufficient to support the denial of PTD compensation.
 {¶ 47} Claimant's final argument is that the commission failed to comply with Noll, supra, because it failed to cite "some evidence" to support the decision and failed to provide an adequate explanation of its rationale. The magistrate disagrees. The commission provided its own independent analysis of the factors, both medical and nonmedical, as well as relying on Mr. Kilcher's vocational evaluation. The commission made specific findings regarding claimant's functional capacities, citing medical evidence in support. The commission also identified relevant vocational factors and set forth at some length its evaluation of those factors. Claimant has not demonstrated an abuse of discretion in the commission's rationale. For example, the commission was within its discretion to conclude that claimant's high school education was a vocational asset. State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92. Indeed, a high school diploma may be viewed as a vocational asset even where a claimant's academic skills are tested at the grade-school level. Id. Further, the commission was within its discretion in relying on claimant's ability to read, write, and perform basic math. State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354
(ruling that the commission may rely on a claimant's ability to read, write and perform basic math — even if limited — in concluding that claimant is capable of performing an entry-level position).
 {¶ 48} In regard to age, the commission acknowledged that claimant's age would be a disadvantage in the labor market but found that it would not preclude employment, which was within its discretion. There is no particular age at which a worker is viewed as too old to work, and workers' compensation benefits were never intended to compensate claimants for simply growing older. Moss, supra, at 417. In addition, the commission considered claimant's work history as positive. It found that the work history demonstrated claimant's ability to learn semi-skilled work in the past. In addition, it concluded that claimant's work as a sales clerk indicated ability to communicate with the public. These inferences were within the commission's discretion. E.g., Ewart, supra. Further, the commission relied on Mr. Kilcher's opinion.
 {¶ 49} The evidence before the commission was susceptible to interpretation, and the role of the court in mandamus is limited. An order supported by "some evidence" must be upheld, regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. Here, the commission's order was supported by some evidence and the commission provided an adequate explanation of its rationale. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.